# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

STATE OF FLORIDA,

    *Plaintiff*,

    v.                              No. 8:21-cv-2524-SDM-TGW

BILL NELSON, in his official capacity as
Administrator of the National Aeronautics and
Space Administration; NATIONAL
AERONAUTICS AND SPACE
ADMINISTRATION; the UNITED STATES
OF AMERICA; JOSEPH R. BIDEN, JR., in
his official capacity as President of the United
States; FEDERAL ACQUISITION
REGULATORY COUNCIL; LESLEY A.
FIELD, in her official capacity as Acting
Administrator for Federal Procurement, Office
of Management and Budget; JOHN M.
TENAGLIA, in his official capacity as
Principal Director of Defense Pricing and
Contracting, Department of Defense; JEFFREY
A. KOSES, in his official capacity as Senior
Procurement Executive & Deputy Chief
Acquisition Officer, General Services
Administration; KARLA S. JACKSON, in her
official capacity as Assistant Administrator for
Procurement, National Aeronautics and Space
Administration; SHALANDA D. YOUNG, in
her official capacity as Acting Director of the
Office of Management and Budget; OFFICE
OF MANAGEMENT AND BUDGET; the
GENERAL SERVICES ADMINISTRATION;
ROBIN CARNAHAN, in her official capacity
as General Services Administrator,

    *Defendants*.

_____/

**FIRST AMENDED COMPLAINT FOR DECLARATORY**
**AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Relying on a statute authorizing the President to "prescribe policies and directives that the President considers necessary to carry out" the Federal Property and Administrative Services Act of 1949 (FPASA), 40 U.S.C. § 121(a), the Biden Administration seeks to compel millions of Americans who work for government contractors to receive a COVID-19 vaccine.

2. Nothing in that statute authorizes such a radical intrusion on the personal autonomy of American workers—especially, as is the case here, when many of those workers are officials of a sovereign state.

3. But even if FPASA did authorize such a mandate, the Biden Administration's vaccine requirements would still be unlawful because the manner in which they were enacted violates fundamental principles of administrative and procurement law.

4. The Federal Acquisition Regulatory Council (FAR Council) is the agency exclusively charged with creating "[g]overnment-wide procurement regulation[s]." 41 U.S.C. § 1303(a)(1). Other agencies may not enact such regulations. *Id.* § 1303(a)(2).

5. Yet that is precisely what the President's executive order contemplates. *See* Exec. Order No. 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50,985 (Sept. 9, 2021). The executive order directs the Safer Federal Workforce Task Force (Task Force) to draft federal contractor vaccine

requirements—along with other onerous mandates for federal contractors like masking and social distancing—subject only to approval by the Director of the Office of Management and Budget (OMB). *Id.*

6. This not only violates the exclusivity provisions of § 1303(a), but also 41 U.S.C. § 1707(a)–(b), which requires notice and comment for any "procurement policy, regulation, procedure, or form," subject only to a narrow "urgent and compelling circumstances" exception, *id.* § 1707(d).

7. The government has not conducted notice and comment in approving the Task Force's guidance. Its first attempt at approving the guidance ignores § 1707 entirely, *see* Determination of the Promotion of Economy and Efficiency in Federal Contracting Pursuant to Executive Order No. 14042, 86 Fed. Reg. 53,691 (Sept. 28, 2021), while its second attempt invokes the urgent and compelling circumstances exception but does not come close to satisfying it, *see* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63,418 (Nov. 16, 2021).

8. Moreover, neither of the OMB rules engage in reasoned decisionmaking. The old OMB rule contains no reasoning at all.

9. The new OMB rule attempts to clean up the government's mess, but it similarly fails to satisfy the APA's requirements.

10. Meanwhile, even though the President has sought to circumvent the FAR Council's authority, he has separately instructed the FAR Council to amend federal

procurement regulations to include a contract clause requiring federal contractors to comply with the Task Force guidance once approved by OMB. *See* 86 Fed. Reg. at 50,986. But the FAR Council, too, has ignored § 1707(a)–(b), instead promulgating the requested contract clause without notice and comment as "guidance." *See* Memorandum from FAR Council to Chief Acquisition Officers et al. re: Issuance of Agency Deviations to Implement Executive Order 14042 (Sept. 30, 2021) [hereinafter FAR Council guidance], https://www.whitehouse.gov/wp-content/uploads/2021/09/FAR-Council-Guidance-on-Agency-Issuance-of-Deviations-to-Implement-EO-14042.pdf.

11. The government is, of course, treating this "guidance" as binding, as multiple agencies are already including the contract provision drafted by the FAR Council in their contracts.

12. But even if the Administration were not treating it as binding, the FAR Council guidance would still violate § 1707(a)–(b) because, at a minimum, the guidance is a "procurement policy" subject to notice and comment. 41 U.S.C. § 1707(a)(1).

13. Making matters worse, the contract language violates the Spending Clause by conditioning Florida's receipt of appropriated funds on Florida agreeing to comply with the Task Force guidance *even if it changes* during the course of the contract. FAR Council guidance at 5.

14. On top of all these issues, the vaccine requirements are transparently pretextual. While the government pays lip service to the rationale of "improv[ing]

economy and efficiency" in federal procurement, 86 Fed. Reg. at 53,692, it openly admits that its true purpose is to "get[] more people vaccinated and decrease the spread of COVID-19." FAR Council guidance at 3; *see also* Remarks by President Biden on Fighting the COVID-19 Pandemic, White House (Sept. 9, 2021) [hereinafter President Biden Remarks], https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ ("As your President, I'm announcing tonight a new plan to require more Americans to be vaccinated, to combat those blocking public health.")

15. Having failed in its earlier attempts to dictate COVID policy from Washington, *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021), one can understand why the Executive Branch is no longer relying on its public health authorities to regulate public health. But doing so under the guise of efficient procurement is pretextual and violates the APA. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573–76 (2019).

16. Because the government's unlawful vaccine requirements seek to preempt and otherwise frustrate enforcement of Florida law, interfere with Florida's employment policies, and threaten Florida with economic harm and the loss of federal contracts, the State seeks relief from this Court.

## PARTIES

17. Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its sovereign interests, its public fisc, and the health, safety, and welfare of its citizens.

18. Defendants are the United States, the President of the United States, appointed officials of the United States government, and United States governmental agencies responsible for the issuance and implementation of the challenged actions.

19. Defendant Joseph R. Biden, Jr. issued the challenged executive order. *See* 86 Fed. Reg. at 50,985.

20. Defendant OMB is an agency within the Executive Office of the President. OMB issued the two rules approving the Task Force guidance. *See* 86 Fed. Reg. at 53,691; 86 Fed. Reg. at 63,418.

21. Defendant FAR Council is responsible for "manag[ing], coordinat[ing], control[ing], and monitor[ing] the maintenance of, issuance of, and changes in the Federal Acquisition Regulation." 41 U.S.C. § 1303(d). The FAR Council issued the challenged guidance. *See* FAR Council guidance.

22. Defendant National Aeronautics and Space Administration (NASA) frequently contracts with Florida, has current contractual relationships with Florida, and is and will continue to seek to impose the Biden Administration's unlawful requirements on Florida.

23. Defendant General Services Administration (GSA) frequently contracts with Florida, has current contractual relationships with Florida, and is and will continue to seek to impose the Biden Administration's unlawful requirements on Florida.

24. Defendant Shalanda D. Young is the Acting Director of OMB. She is sued in her official capacity.

25. Defendants Lesley A. Field, John M. Tenaglia, Jeffrey A. Koses, and Karla S. Jackson are members of the FAR Council by virtue of their roles in their respective agencies. Defendant Lesley A. Field is the Acting Administrator for Federal Procurement of OMB. Defendant John M. Tenaglia is the Principal Director of Defense Pricing and Contracting of the Department of Defense. Defendant Jeffrey A. Koses is the Senior Procurement Executive & Deputy Chief Acquisition Officer of GSA. Defendant Karla S. Jackson is the Assistant Administrator for Procurement of NASA. They are sued in their official capacities.

26. Defendant Bill Nelson is the Administrator of NASA. He is sued in his official capacity.

27. Defendant Robin Carnahan is the Administrator of GSA. She is sued in her official capacity.

## JURISDICTION AND VENUE

28. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361 and 5 U.S.C. §§ 702–03.

29. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 706, 28 U.S.C. §§ 1361, 2201–02, the Constitution, and the Court's equitable powers.

30. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because the State of Florida is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *See California v. Azar*, 911 F.3d 558, 570 (9th Cir.

2018).[1] Further, there is a related case pending in this division, which also challenges the vaccine requirements for federal contractors. *See Navy Seal 1 v. Biden*, 8:21-cv-2429-SDM-TGW (M.D. Fla.).

## FACTUAL BACKGROUND

### The Federal Property and Administrative Services Act

31. In the aftermath of World War II, during which the federal government amassed a substantial amount of war supplies and other property, there was an evident need for "an improved and efficient property management program," H.R. Rep. No. 81-670, at 1475, and an overhaul of the internal "housekeeping" activities of the world's largest buyer of goods and services in the world, *id.* at 1476. As one member of Congress explained, the federal procurement system was "largely uncoordinated, to some extent duplicative," and in desperate need of reform. 95 Cong. Rec. 7441 (June 8, 1949) (remarks of Rep. Holifield).

32. Congress enacted FPASA in 1949 "to provide the [f]ederal [g]overnment with an economical and efficient system for" certain enumerated activities, including "[p]rocuring and supplying property and nonpersonal services," "establish[ing] . . . pools or systems of transportation of [g]overnment personnel," and "manag[ing] of public utility services." 40 U.S.C. § 101(1).[2]

---

[1] *Accord Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005); *see also Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892) (explaining that "the state government . . . resides at every point within the boundaries of the state").

[2] Although the relevant statutes have changed over time, Florida cites the current versions except when citing prior versions is necessary to explain historical developments.

33. For example, FPASA charges GSA with returning excess foreign property, *id.* § 702, and donating surplus medical supplies owned by the federal government, *id.* § 703. It also prescribes rules for the use of proceeds from sales or transfers of property, *id.* § 571, and outlines procedures for the selection of architects and engineers, *id.* § 1103.

34. To effectuate FPASA, Congress authorized the President to "prescribe policies and directives that the President considers necessary to carry out" that statute. *Id.* § 121(a). Notably, Congress did not authorize the President to issue orders with the force or effect of law, as it authorized the GSA Administrator to do. *Compare* § 121(a) ("prescribe policies and directives"), *with* § 121(c) ("prescribe regulations"); *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

35. Over time, however, FPASA proved inadequate to control the lack of coordination across agencies, and the proliferation of procurement regulations by different agencies led to a morass of legal requirements.[3] In 1979, Congress directed the Office of Federal Procurement Policy (OFPP)—part of OMB—to "issue policy directives . . . for the purpose of promoting the development and implementation of

---

[3] As early as 1972, the Commission on Government Procurement described the landscape as "a burdensome mass and maze of procurement and procurement-related regulations" with "no effective overall system for coordinating, controlling, and standardizing regulations." Kate M. Manuel et al., Cong. Rsch. Serv., R42826, The Federal Acquisition Regulation (FAR): Answers to Frequently Asked Questions 10 (2015) (quoting United States Comm'n on Gov't Procurement, Report of the Commission on Government Procurement, Vol. 1, at 33 (1972)), https://sgp.fas.org/crs/misc/R42826.pdf.

[a] uniform procurement system," with concurrence of the OMB Director. *See* Office of Federal Procurement Policy Amendments of 1979, Pub. L. No. 96-83, § 4(e), 93 Stat. 650; *see also* Kate M. Manuel et al., Cong. Rsch. Serv., R42826, The Federal Acquisition Regulation (FAR): Answers to Frequently Asked Questions 10 (2015), https://sgp.fas.org/crs/misc/R42826.pdf.

36. In 1983, under the policy directive of the Administrator of OFPP, the Department of Defense, GSA, and NASA jointly promulgated the first version of the Federal Acquisition Regulation (FAR), 48 Fed. Reg. 42,102 (Sept. 19, 1983).

37. Even after creation of the FAR, however, the problems FPASA was designed to solve persisted. S. Rep. No. 100-424, at 13–14 ("Redundancies and inconsistencies continue to exist between the FAR and agency supplementing regulations implementing the FAR." (quoting study prepared by OMB Director Tom Daley (Nov. 1986))).

38. Finally, in 1988, after decades of failure by officials in the Executive Office of the President charged with coordinating government-wide procurement,[4] Congress established the FAR Council "to assist in the direction and coordination of [g]overnment-wide procurement policy and [g]overnment-wide procurement regulatory activities in the [f]ederal [g]overnment." Office of Federal Procurement

---

[4] *See* S. Rep. No. 100-424, at 4 ("OFPP's performance as the [f]ederal [g]overnment's procurement policy leader has been uneven. . . . [M]any of the procurement executives, industry officials and other procurement experts . . . rated OFPP's overall performance during this as being no more than marginally [e]ffective." (quoting Assessment of the Office of Federal Procurement Policy, GAO/NSIAD–88–35 (Nov. 1987))).

Policy Act Amendments of 1988, Pub. L. No. 100-679, § 3, 102 Stat. 4056, *later codified at* 41 U.S.C. §1302(a).

39. The FAR Council consists of the OFPP Administrator, the Secretary of Defense, the Administrator of NASA, and the GSA Administrator. 41 U.S.C. § 1302(b).[5]

40. Subject to limited exceptions,[6] the FAR Council has the exclusive authority to issue "a single [g]overnment-wide procurement regulation." *Id.* § 1303(a)(1). No other agency is authorized to issue government-wide procurement regulations. *Id.* § 1303(a)(2).

41. Finally, § 1707 further protects Congress's reforms to government procurement practices by requiring that any "procurement policy, regulation, procedure, or form"—whether issued government wide by the FAR Council or for one agency by that agency—be subject to notice and comment. 41 U.S.C. § 1707(a)–(b). The relevant official may waive that requirement only if "urgent and compelling circumstances make compliance with the requirements impracticable." *Id.* § 1707(d).

<u>The Biden Administration's Vaccine Policies</u>

42. Despite pushing the envelope in numerous ways during the COVID-19 pandemic, *e.g.*, *Ala. Ass'n of Realtors*, 141 S. Ct. at 2485; *Florida v. Becerra*, 8:21-cv-839,

---

[5] These officials are authorized to designate another agency official to serve on the FAR Council. 41 U.S.C. § 1302(b)(2).
[6] For example, the OFPP Administrator may issue government-wide regulations if the Department of Defense, NASA, and GSA are unable to agree on or fail to issue regulations, 41 U.S.C. § 1121(d), and may remove a regulation if it is inconsistent with the FAR, *id.* § 1303(a)(5).

2021 WL 2514138 (M.D. Fla. June 18, 2021), the Biden Administration has made clear that mandating vaccines is "not the role of the federal government." Press Briefing by Press Secretary Jen Psaki, July 23, 2021, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/23/press-briefing-by-press-secretary-jen-psaki-july-23-2021/.

43. Since his press secretary made that statement, however, the President's "patience" has apparently been "wearing thin," and he has grown "angr[y] at those who haven't gotten vaccinated." President Biden Remarks.

44. On September 9, 2021, the President announced three new administrative actions aimed at compelling much, if not most, of the adult population in the United States to receive a COVID-19 vaccine. *Id.*

45. First, the President announced that the Department of Labor would develop an emergency rule mandating that private employers with 100 or more employees require their employees to become fully vaccinated or submit to weekly testing. *Id.*

46. Second, the President announced that the federal government would mandate vaccines for employees who work at healthcare facilities that accept Medicare and Medicaid. *Id.*

47. Finally, as relevant here, the President announced that he would issue an executive order requiring all executive branch employees and federal contractors to be vaccinated. As the President put it, "[i]f you want to work with the federal government and do business with us, get vaccinated. If you want to do business with the federal government, vaccinate your workforce." *Id.*

48. In making this announcement, President Biden claimed that these combined initiatives would affect about 100 million Americans. *Id.*

The Challenged Actions

49. On September 9, 2021, President Biden issued the challenged executive order. 86 Fed. Reg. at 50,985. The order relies on FPASA, as well as the Constitution and the President's power under 3 U.S.C. § 301 to delegate his statutory authorities. 86 Fed. Reg. at 50,985.

50. The executive order directs all agencies to ensure that "contracts and contract-like instruments [covered by the executive order] . . . include a clause [that specifies] that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force," subject to that guidance being approved by the OMB Director. 86 Fed. Reg. at 50,985.

51. The executive order instructs the Task Force to develop this guidance and asks the OMB Director, pursuant to the President's delegation of his FPASA power under 3 U.S.C. § 301, to determine whether the Task Force guidance will promote economy and efficiency in federal procurement. 86 Fed. Reg. at 50,985–86. If the OMB Director makes this determination and publishes it in the Federal Register, agencies are to include this clause in covered contracts. *Id.* The order contemplates that the Task Force will update the guidance on a continuing basis, subject to re-approval by the OMB Director. *Id.*

52. The executive order also instructs the FAR Council to "amend the [FAR] to provide for inclusion in [f]ederal procurement solicitations and contracts subject to this order" the contract clause discussed in the executive order and further instructs agencies to seek to implement the contract clause in contracts not covered by the FAR. *Id.* at 50,986.

53. The executive order exempts certain contracts such as those with a value below "the simplified acquisition threshold," which is typically $250,000. 86 Fed. Reg. at 50,986–87; FAR § 2.101.

54. The executive order applies to contracts entered into, renewed, or with an option to be exercised on or after October 15, 2021. 86 Fed. Reg. at 50,987.

55. On September 28, 2021, as contemplated by the executive order, the Acting OMB Director published a notice of determination in the Federal Register, finding that the first iteration of the Task Force guidance "will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a [f]ederal [g]overnment contract." 86 Fed. Reg. at 53,692. She did so without reasoning and without notice and comment. The guidance requires vaccination of covered contractor employees and masking and social distancing, among other requirements.

56. On September 30, 2021, the FAR Council—purporting to comply with the executive order—issued its "guidance" entitled "Issuance of Agency Deviations to Implement Executive Order 14042." *See* FAR Council guidance.

57. In its guidance, the FAR Council "encourage[s] [agencies] to make . . . deviations" to the FAR, which should be "effective until the FAR is amended." *Id.* at 3.

58. A deviation clause is a clause that is inconsistent with the FAR. FAR § 1.401. The FAR prescribes procedures for both individual deviations and class deviations. *Id.* § 1.403–04. Deviations are not an appropriate manner to implement a government-wide procurement policy, and "[w]hen an agency knows that it will require a class deviation on a permanent basis, it should propose a FAR revision." *Id.* § 1.404.

59. The contract clause cites the executive order as the single authority for these deviations and contains little substantive content other than requiring compliance with the Task Force guidance, even if that guidance is amended during performance of the contract. FAR Council guidance at 3–5.

60. The FAR Council guidance "reminds" agencies that, under the executive order, they are "required to include an implementing clause" in new contracts awarded on or after November 14, new solicitations issued on or after October 15, extensions or renewals of existing contracts awarded on or after October 15, and options on existing contracts exercised on or after October 15. *Id.* at 2.

61. The FAR Council guidance also "strongly encourages" agencies to apply the guidance broadly by including the clause in contracts before those deadlines and on contracts not otherwise subject to the executive order. *Id.* at 3. This broad

application is meant "[t]o maximize the goal of getting more people vaccinated and decreas[ing] the spread of COVID-19." *Id.* at 3.

62. On October 28, Florida filed this suit. Several other States also filed suit. *See* Doc. 8.

63. On November 10, the day of its first preliminary injunction hearing in these cases, the government rescinded the old OMB rule and issued a new one. OMB published its new rule in the Federal Register on November 16. 86 Fed. Reg. at 63,418.

64. The new OMB rule purports to approve new Task Force guidance, though the only change is moving the vaccination deadline from December 8, 2021, to January 18, 2022. *Id.* at 63,418–21. The new OMB rule also claims to offer an economy-and-efficiency analysis, *id.* at 63,421, and to make a finding regarding dispensing with notice and comment, *id.* at 63,423.[7]

65. Finally, the new OMB rule references, though does not expressly approve, the Task Force's Frequently Asked Questions. *Id.* at 63,421 (providing a hyperlink). But the FAQs are quite substantive, and the FAR Council's deviation clause requires compliance with them. FAR Council guidance at 5. For example, two FAQs explain that proof of prior COVID infection—even with an antibody test proving natural immunity—does not exempt a person from vaccination. Another makes clear that the vaccination requirements apply to pregnant women. And the FAQs even purport to give the FAR Council's contract clause preemptive effect, explaining that it

---

[7] Florida provides a more detailed summary of the new OMB rule in its amended motion for preliminary injunction.

"supersede[s] any contrary State or local law or ordinance." As best Florida can tell, the FAQs are subject to change or revision at any time by the Task Force, which includes White House staffers not appointed consistent with the Appointments Clause.

<u>Florida is Irreparably Harmed by These Acts</u>

66. Florida contracts with the federal government as a matter of course. Space Florida, an arm of the State, § 331.302(1), Fla. Stat., has several contracts with NASA. Many involve leasing federal land, but others involve Space Florida providing services to the government. Florida's public universities also have many contracts with the government, especially for research. And the Florida Department of Education has a number of contracts with GSA, including for providing vending and other food-related services in GSA buildings. These contracts are worth tens of millions of dollars, if not more. Florida expects to continue pursuing government contracts in the future.

67. The vaccine requirements also harm Florida's economy by hamstringing businesses in Florida and harms Florida's parens patriae interests.

68. Further, on November 18, 2021, Governor DeSantis signed legislation that prohibits state entities from mandating employee vaccinations and prohibits private employers from mandating the same without offering several exemptions—including exemptions based on pregnancy, natural immunity, submitting to testing, or wearing personal protective equipment. *See* §§ 381.00317, 112.0441, 381.00319, Fla. Stat. The vaccine mandate, especially given the government's position that its contracts preempt Florida law, harms Florida's sovereign interests by seeking to compel businesses in Florida to violate Florida law.

## CLAIMS

## <u>COUNT 1</u>

### Agency action that is not in accordance
### with law and is in excess of authority
### (Old OMB Rule)

69. Florida repeats and incorporates by reference ¶¶ 1–68.

70. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

71. The old OMB rule is contrary to law for at least four reasons.

72. *First*, the old OMB rule violates 41 U.S.C. § 1303(a) because it is a government-wide procurement regulation, which only the FAR Council may issue.

73. The executive order apparently seeks to circumvent § 1303 by delegating the President's FPASA power to the OMB Director. 86 Fed. Reg. at 50,985.

74. That attempt is unlawful because the President has no authority to issue regulations under § 1303—only the FAR Council may issue government-wide procurement regulations. *See Centralizing Border Control Policy Under the Supervision of the Attorney General*, 26 Op. O.L.C. 22, 23 (2002) ("Congress may prescribe that a particular executive function may be performed only by a designated official within the Executive Branch, and not by the President.").

75. *Second*, and relatedly, the old OMB rule is contrary to law because FPASA does not otherwise grant the President the power to issue regulations with the force or

effect of law. Congress authorized the President to "prescribe policies and directives that the President considers necessary to carry out" FPASA. 40 U.S.C. § 121(a). "[P]olicies and directives" describe the President's power to direct the exercise of procurement authority throughout the government. It does not authorize the President to issue regulations himself.

76. Congress knows how to confer that power, as it authorized the GSA Administrator, in the same section of the statute, to "prescribe regulations." *Id.* § 121(c); *see also Sosa*, 542 U.S. at 711 n.9 ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."). And Congress has given the President the power to "prescribe regulations" in other contexts, typically in the realm of foreign affairs and national defense. *E.g.*, 18 U.S.C. § 3496 ("The President is authorized to prescribe regulations governing the manner of executing and returning commissions by consular officers."); 32 U.S.C. § 110 ("The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard.").

77. *Third*, even if FPASA authorized the President to issue orders with the force or effect of law, it would not authorize approval of the Task Force guidance. The President appears to assume that FPASA authorizes him to issue any order that he believes, as FPASA's statement of purpose states, promotes "an economical and efficient" procurement system. 40 U.S.C. § 101; *see* 86 Fed. Reg. at 50,985 ("This order promotes economy and efficiency in [f]ederal procurement."). But that mistakes a prefatory purpose statement for a grant of authority. *D.C. v. Heller*, 554 U.S. 570, 578

(2008) ("[A]part from [a] clarifying function, a prefatory clause does not limit or expand the scope of the operative clause.").

78. And even if FPASA did authorize the President to issue binding procurement regulations solely because they may promote economy and efficiency, the old OMB rule does not adequately do so. Providing the federal government with an "economic and efficient system for" procurement is not a broad enough delegation to impose nationwide social policy that Congress has not separately authorized. Further, the executive order is divorced from the practical needs of procurement. It will exclude otherwise competitive bidders, cause contractors to suffer labor shortages, and is substantially overbroad in, for example, refusing to account for natural immunity and ignoring the low transmission risk for COVID-19 outdoors.

79. *Fourth*, the old OMB rule is inconsistent with the requirements of the Competition in Contracting Act, which requires federal agencies to "provide for full and open competition through the use of competitive procedures." 41 U.S.C. § 3301; *see* 40 U.S.C. § 121(a) (requiring "policies" issued by the President pursuant to FPASA to be "consistent with this subtitle"); 40 U.S.C. § 111 (defining "this subtitle" to include portions of Title 41, including § 3301). The old OMB rule precludes an entire class of contractors from obtaining federal contracts without regard to their capability to perform the contract. That is unlawful. *See Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 986 (Fed. Cir. 2019) (finding invalid an agency policy that "effectively exclude[d] an offeror from winning an award, even if that offeror represent[ed] the best value to the government").

80. Because the old OMB rule violates § 1303(a), seeks to exercise a delegated power the President does not possess, relies on a misreading of FPASA, and violates § 3301, it is contrary to law.

## COUNT 2

### Failure to conduct notice and comment[8]
### (Old OMB Rule)

81. Florida repeats and incorporates by reference ¶¶ 1–68.

82. Under 41 U.S.C. § 1707(a)–(b), procurement "polic[ies], regulation[s], procedure[s], or form[s]" must go through notice and comment, so long as they "relate to the expenditure of appropriated funds" and either (i) have "a significant effect beyond the internal operating procedures of" the issuing agency, or (ii) have "a significant cost or administrative impact on contractors or offerors."

83. The old OMB rule easily satisfies each of these requirements. Moreover, the government has not invoked the exception in § 1707(d), which requires "urgent and compelling circumstances" that "make compliance with the requirements impracticable." 41 U.S.C. § 1707(d); *see id.* § 1707(e) (requiring an agency invoking that exception to designate the action as "temporary" and provide a 30-day comment period after it becomes effective).

---

[8] Florida focuses on 41 U.S.C. § 1707 rather than 5 U.S.C. § 553 because § 1707 is stricter. *See* 5 U.S.C. § 706(2)(D).

84. Even if it had, the COVID-19 pandemic has existed for over eighteen months, and the prospect of a vaccine has existed for at least a year. There is no reason that notice and comment was impracticable.

## COUNT 3

### Arbitrary and capricious agency action
### (Old OMB Rule)

85. Florida repeats and incorporates by reference ¶¶ 1–68.

86. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

87. An agency action is arbitrary or capricious if it fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

88. The old OMB rule contains no explanation or reasoning at all. 86 Fed. Reg. at 53,691–92.

89. What is more, the old OMB rule is arbitrary and capricious because the Task Force guidance does not sufficiently promote economy and efficiency, or at least consider and address the shortfalls Florida has highlighted.

90. Moreover, the old OMB rule ignores costs to the States, a "centrally relevant factor when deciding whether to regulate," *Michigan v. EPA*, 576 U.S. 743, 752–53 (2015), and neither accounts for Florida's reliance interests nor considers lesser alternatives, *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913–14 (2020).

91. Finally, the Acting OMB Director's conclusion that the Task Force guidance would improve procurement efficiency by reducing absenteeism and decreasing labor costs is blatantly pretextual. *See Dep't of Com.*, 139 S. Ct. at 2576 ("Accepting contrived reasons would defeat the purpose of the enterprise [of judicial review.]").

92. The old OMB rule is a trojan horse for federal regulation of public health. President Biden, in his remarks announcing the executive order, stated that he was "frustrated with the nearly 80 million Americans who are still not vaccinated," referenced "overcrowd[ed] . . . hospitals" and "overrun[] . . . emergency rooms," and blamed "elected officials actively working to undermine the fight against COVID-19." President Biden Remarks.

93. The FAR Council guidance likewise admits that the goal of this effort is "getting more people vaccinated and decreas[ing] the spread of COVID-19." FAR Council guidance at 3.

94. For all these reasons, the old OMB rule is arbitrary and capricious.

## COUNT 4

### Agency action that is not in accordance
### with law and is in excess of authority
### (FAR Council Guidance)

95. Florida repeats and incorporates by reference ¶¶ 1–68.

96. While the FAR Council claims to be issuing only "guidance," the guidance is being "applied . . . in a way that indicates it is binding." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). It is therefore reviewable.

97. The guidance does not explain what authority would authorize the FAR Council to create a government-wide procurement regulation mandating vaccines for contractors. But to the extent the FAR Council relies on FPASA, it lacks that authority for the reasons described in count 1.

98. Moreover, the FAR Council guidance's contract clause requires compliance with the FAQs, which are not approved by the Acting OMB Director, are subject to change at any time, are not published in the Federal Register, and violate the Appointments Clause.

## COUNT 5

### Failure to conduct notice and comment
### (FAR Council Guidance)

99. Florida repeats and incorporates by reference ¶¶ 1–68.

100. As discussed in count 2, 41 U.S.C. § 1707(a)–(b) requires procurement "polic[ies], regulation[s], procedure[s], or form[s]" to go through notice and comment.

101. Even if the FAR Council guidance is not being treated as binding—and it is—the guidance is a procurement policy.

102. By requiring notice and comment—not just for regulations, but for policies—Congress subjected all government-wide pronouncements, whether binding or not, to notice and comment. The FAR Council guidance is therefore invalid.

103. Moreover, the contract language in the guidance is a procurement form subject to notice and comment.

104. For these reasons, and those discussed in count 2, the FAR Council guidance is invalid.

## COUNT 6

**Arbitrary and capricious agency action
(FAR Council Guidance)**

105. Florida repeats and incorporates by reference ¶¶ 1–68.

106. The FAR Council guidance is arbitrary and capricious for the reasons explained in count 3.

## COUNT 7

**Agency action that is not in accordance
with law and is in excess of authority
(New OMB Rule)**

107. Florida repeats and incorporates by reference ¶¶ 1–68.

108. The new OMB rule is contrary to law for the reasons explained in count 1.

## COUNT 8

**Failure to conduct notice and comment
(New OMB Rule)**

109. Florida repeats and incorporates by reference ¶¶ 1–68.

110. The new OMB rule is subject to notice and comment for the same reasons as the old OMB rule.

111. OMB's finding regarding dispensing with notice and comment does not meet the very high urgent and compelling circumstances exception. Neither COVID-19 nor the Delta variant are new. And the government cannot rely on its desire to move the December 8 vaccination deadline because that is a problem of its own making.

## COUNT 9

### Arbitrary and capricious agency action
### (New OMB Rule)

112. Florida repeats and incorporates by reference ¶¶ 1–68.

113. The new OMB rule, like the old OMB rule, fails to consider costs to the States, reliance interests, or lesser alternatives—including accounting for natural immunity, exempting those working outdoors, accounting for the effectiveness of therapeutics, and allowing a testing alternative.

114. It also ignores the significant risk of mass resignations as a result of the rule.

115. And it only affirms Florida's pretext argument, given that it relies on public health reasons for dispensing with notice and comment.

116. Finally, the new OMB rule fails to consider an important aspect of the problem by declining to approve or reject the FAQs given their status as binding.

## COUNT 10

### Ultra vires acts of the President

117. Florida repeats and incorporates by reference ¶¶ 1–68.

118. Apart from the APA, there is a nonstatutory cause of action to challenge unlawful procurement-related actions by the President. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1330 (D.C. Cir. 1996) (discussing a government concession to that effect).

119. As explained in the previous counts, the President's actions violate several statutes and are ultra vires. Moreover, to the extent the Court determines that the Acting OMB Director's actions are exempt from APA review, Florida's arguments—other than its arbitrary and capricious arguments—apply under this cause of action. *See* counts 1–2, 7–8.

## COUNT 11

### Implementation of the executive order that violates the APA

120. Florida repeats and incorporates by reference ¶¶ 1–68.

121. Insofar as the Court finds the challenged administrative actions unreviewable in whole or in part, Florida challenges Defendants' implementation of those actions, including the government-wide policy of using deviation clauses to implement the executive order and FAR Council guidance. *See Reich*, 74 F.3d at 1328 ("[R]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 815 (1992) (Scalia, J., concurring in part and concurring in the judgment))).

122. In addition to the points discussed in the previous counts, government-wide use of identical (or virtually identical) deviation clauses unlawfully circumvents the FAR Council's authority and is at a minimum subject to notice and comment. *Navajo Refining Co., L.P. v. United States*, 58 Fed. Cl. 200, 207–09 (2003).

123. Moreover, the deviation clauses require compliance with the FAQs, even though they are not approved by the Acting OMB Director, are subject to change at any time, are not published in the Federal Register, should have gone through notice and comment, and violate the Appointments Clause.

## COUNT 12

### Violation of the U.S. Constitution, Art. I, § 1
### Unconstitutional delegation of legislative power

124. Florida repeats and incorporates by reference ¶¶ 1–68.

125. Article I, § 1 of the U.S. Constitution states, "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." Under Article I, § 1, only Congress may engage in lawmaking.

126. To the extent the Court agrees that FPASA authorizes the President to require contractors to mandate vaccines to their employees to promote economy and efficiency in procurement, FPASA lacks an intelligible principle and represents an unconstitutional delegation of legislative authority.

## COUNT 13

### Violation of the U.S. Constitution, Amend. X
### Unconstitutional exercise of the spending power

127. Florida repeats and incorporates by reference ¶¶ 1–68.

128. The challenged actions are unconstitutional conditions on the State's receipt of federal funds.

129. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," so "States [can] exercise their choice knowingly," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

130. Federal contracts are an exercise of the Spending Clause, yet the challenged actions ask Florida to agree to an ambiguous contract term—specifically, agreeing to comply with uncertain Task Force guidance that can be changed at any time.

131. The challenged actions are invalid for that reason alone.

## COUNT 14

### Declaratory judgment that challenged actions are unlawful

132. Florida repeats and incorporates by reference ¶¶ 1–68.

133. For the same reasons described in each of the previous counts, Florida is entitled to a declaratory judgment that the Defendants are violating the law.

### PRAYER FOR RELIEF

For these reasons, Florida asks the Court to:

a) Hold unlawful and set aside the executive order, the OMB rules, the FAR Council guidance, and Defendants' implementation of these unlawful actions, including their use of deviation clauses.

b) Issue preliminary and permanent injunctive relief enjoining Defendants from implementing or enforcing the executive order, the OMB rules, and the FAR Council guidance.

c) Issue declaratory relief declaring the Defendants' actions unlawful.

d) Award Florida costs and reasonable attorney's fees.

e) Award such other relief as the Court deems equitable and just.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival* (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY
*Lead Counsel

Henry Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2021, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ James H. Percival*
James H. Percival
