UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE OF FLORIDA,

    *Plaintiff*,

    v.                                                     No. 8:21-cv-2524-SDM-TGW

BILL NELSON, et al.,

    *Defendants*.

_____/

## FLORIDA'S SUPPLEMENTAL BRIEF

This Court asked the parties to file supplemental briefs addressing four questions related to the deviation clauses that implement the challenged executive order and the requirements of 41 U.S.C. § 1707. *See* Doc. 31. Florida addresses each question below.

Before doing so, however, Florida wishes to highlight an issue that may inform the Court's consideration of these questions. Each of the deviation clauses uses the contract clause drafted by the FAR Council. *See* FAR Council guidance at 4–5; Ex. 1. That clause requires contractors to comply with guidance "published by the Safer Federal Workforce Task Force." FAR Council guidance at 5. Under the executive order, the Task Force may only publish such guidance when the OMB Director "approves" the guidance and makes an economy and efficiency finding. Exec. Order No. 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50,985, 50,985 (Sept. 9, 2021).

As a result of this framework, the deviation clauses impose no obligations on federal contractors *unless and until* the OMB Director approves the Task Force guidance. OMB attempted to do so via the new OMB rule, which Florida challenges on multiple grounds. If this Court preliminarily enjoins enforcement or implementation of the new OMB rule, that will have the effect of nullifying the deviation clauses because there will be no Task Force guidance with which contractors must comply. In other words, even if this Court agrees with the government's contention that each agency is implementing its deviation clause pursuant to its own authority (and that authority alone), those clauses have no effect absent OMB approval of the Task Force guidance. For this reason, Florida respectfully submits that the Court should at a minimum preliminarily enjoin enforcement or implementation of the new OMB rule, which would render the deviation clauses a nullity.

## I. SECTION 1707 APPLIES TO THE CLASS DEVIATIONS.[1]

Pursuant to the executive order, the government is using identical contract clauses across its agencies, as reflected in each agency's class deviation. *See* Ex. 1. Section 1707 applies to each such deviation.

Section 1707 applies to "a procurement policy, regulation, procedure, or form (including an amendment or modification thereto)" so long as two conditions are met.

---

[1] The government argues that Florida waived any arguments related to the class deviations by raising them for the first time in its reply. *See* Doc. 26 at 8. But Florida's reply was also an amended motion in response to the government taking new action, and the parties' joint submission to this Court did not limit the arguments Florida could raise. *See* Doc. 19. In any event, Florida's argument that the class deviations violate § 1707 is made in response to that new action—specifically the § 1707(d) finding in the new OMB rule.

41 U.S.C. § 1707(a)(1). Those conditions are (A) that it "relates to the expenditure of appropriated funds," and (B) that it either (i) "has a significant effect beyond the internal operating procedures of the [issuing] agency," or (ii) "has a significant cost or administrative impact on contractors or offerors." *Id.* The deviation clauses satisfy (A) because they relate to government contracts and they satisfy (B) because they require government contractors to mandate vaccination for millions of American workers. The deviation clauses also relate to procurement, so the only question is whether the deviation clauses are "polic[ies], regulation[s], procedure[s], or form[s]."

The deviation clauses are both procurement regulations and procurement policies. They are procurement regulations because they impose burdensome and unprecedented requirements on contractors. In other words, the deviation clauses "create[] new law, rights, or duties." *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009). The government recognizes as much, which is why it is seeking to amend the Federal Acquisition Regulation. But in the meantime, imposing these requirements via class deviation does not exempt them from § 1707. *See Navajo Refining Co. v. United States*, 58 Fed. Cl. 200, 209 (2003) (noting that "a class deviation may fall within any of the various categories of procurement changes identified" in § 1707); *see also* FAR § 1.404 ("When an agency knows that it will require a class deviation on a permanent basis, it should propose a FAR revision.").

The government has already admitted that the class deviations are regulations. In its surreply and at the hearing, the government asserted that it is implementing the deviation clauses pursuant to 41 U.S.C. § 1303(a)(2)(A). *See* Doc. 26 at 3. That

3

provision exempts from § 1303(a)(2)'s exclusivity rule certain "*regulations* relating to procurement issued by an executive agency." 41 U.S.C. § 1303(a)(2) (emphasis added).[2] But if they are "regulations" then they are subject to § 1707.

The deviation clauses are also procurement policies because they are "[a] standard course of action that has been officially established by an organization, business, political party, etc." *Policy*, Black's Law Dictionary (11th. ed. 2019). The government suggests that the deviation clauses are not procurement policies but merely actions implementing the procurement policy set by the executive order and the OMB rules. *See* Doc. 26 at 8. But that argument is inconsistent with the government's position that each agency is issuing "agency-specific class deviations." *Id.* at 3. The government cannot have it both ways. Florida's position is that the new OMB rule creates government-wide requirements. But if the government is arguing otherwise, it cannot simultaneously argue that each class deviation is not a separate procurement policy.

For these reasons, the deviation clauses are subject to § 1707.

---

[2] At the hearing, the government argued that § 1303(a)(2) is an affirmative grant of authority. But that provision merely explains that "regulations relating to procurement issued by an executive agency [other than the FAR Council] shall be limited to" certain things. 41 U.S.C. § 1303(a)(2). Put differently, it creates an exception to the FAR Council's exclusivity, but it does not affirmatively authorize any specific procurement regulation. Rather, an agency must identify statutory authority to impose the requirements in any regulation it issues. The government has utterly failed to do so in each of its class deviations.

4

## II. THIS COURT HAS JURISDICTION TO CONSIDER A CHALLENGE TO THE DEVIATION CLAUSES.

Section 1491(b)(1) confers exclusive jurisdiction on the Court of Federal Claims "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).[3]

The Federal Circuit has interpreted § 1491(b)(1) to include disputes related to "the application of" regulations to specific solicitations and contracts. *See Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 593 (Fed. Cir. 2021). But challenges to "the validity of a regulation governing a procurement must be brought in federal district court under the Administrative Procedure Act." *Id.* (citing *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1135 (Fed. Cir. 1998)). For the reasons explained above, the class deviations are procurement regulations, and this court has jurisdiction. At least two courts, relying on these same cases, have agreed that district courts have jurisdiction to hear APA challenges to class deviations. *See Bayaud Enters. v. U.S. Dep't of Veteran's Affairs*, 440 F. Supp. 3d 1230, 1237 (D. Colo. 2020); *Alphapointe v. Dep't of Veteran's Affairs*, 416 F. Supp. 3d 1, 7 (D.D.C. 2019).

To be sure, the court in *Navajo Refining*, in adjudicating a damages claim with respect to specific contracts, considered the validity of several "individual deviations"

---

[3] While the statute mentions concurrent jurisdiction in the district courts, Congress terminated that jurisdiction in 2001 via a "sunset provision." *See Bayaud Enters. v. U.S. Dep't of Veteran's Affairs*, 440 F. Supp. 3d 1230, 1237 n.2 (D. Colo. 2020).

5

and one "class deviation." 58 Fed. Cl. at 203, 209. But Florida does not seek damages with respect to specific contracts, it seeks wholesale invalidation of several agency-wide class deviations.[4]

Moreover, with respect to contracts Florida is not a party to—but which the government asserts preempt Florida law—§ 1491(b)(1) is inapplicable for the additional reason that Florida is not an "interested party" able to bring an action under that statute. *See AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (interpreting "interested party" to include only "actual or prospective bidders or offerors"). Florida's exclusive remedy for its sovereign injury, therefore, is to file an APA challenge in district court.

For these reasons, § 1491(b)(1) does not apply to Florida's challenge to the class deviations and this Court has jurisdiction.

### III.   THE DEVIATION CLAUSES VIOLATE § 1707.

If this Court finds that § 1707 applies to the deviation clauses, the government lacks even a plausible defense that it complied with that provision. The government has not conducted notice and comment, and it cannot invoke the exception in § 1707(d) without publishing a notice in the Federal Register that each class deviation is "temporary" and providing "for a public comment period of 30 days beginning on the date on which the notice is published." *See* 41 U.S.C. § 1707(e)(1). The government

---

[4] Florida also notes that the court in *Najavo Refining* never discussed whether it had jurisdiction to consider the validity of a class deviation, presumably because the government raised no such defense. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1268 (11th Cir. 2020) ("When a jurisdictional issue is neither challenged nor discussed, [a court's] exercise of jurisdiction carries no precedential weight.").

6

has not done so. And even if it does so now, it cannot satisfy the "urgent and compelling circumstances" exception for the reasons Florida has already explained. Doc. 24 at 15–16.

The government argues, however, that the new OMB rule's invocation of § 1707(d) is sufficient for each class deviation to comply with § 1707. *See* Doc. 26 at 8. The government is wrong for several reasons.

First, if a deviation clause is a "procurement policy, regulation, procedure, or form" under § 1707, then it "may not take effect until 60 days after *it* is published for public comment." 41 U.S.C. § 1707(a)(1) (emphasis added); *accord id.* § 1707(e)(1)(A) (requiring "a notice of *the* policy, regulation, procedure, or form" (emphasis added)). Put differently, the deviation clause must itself be published for comment, not some other document purportedly describing the policy or regulation, such as the new OMB rule.

Second, the government's argument is a poor fit for the facts of this case. The class deviations were issued *before* the new OMB rule, which was not issued until November 16. *See* Ex 1. It is thus implausible for the government to argue that the new OMB rule's § 1707(d) finding obviated the need for the earlier issued class deviations to comply with § 1707.

Third, as Florida has explained, the § 1707(d) finding in the new OMB rule is legally insufficient. Doc. 24 at 15–16. As such, even if that finding applied to the deviation clauses, they would still be unlawful.

7

## IV. THE REMEDY IF THE DEVIATION CLAUSES VIOLATE § 1707.

Challenges to "the validity of a regulation governing a procurement must be brought in federal district court under the Administrative Procedure Act." *Land Shark Shredding*, 842 F. App'x at 593 (citing *Southfork Sys.*, 141 F.3d at 1135). Florida brings such a challenge here.

Under the APA, "the reviewing court shall . . . hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)–(D). A violation of § 1707 falls within each of these categories. The ultimate remedy, therefore, is for the Court to hold unlawful and set aside the deviation clauses. The remedy at this stage is preliminarily enjoining the agencies from enforcing or implementing those clauses.

The Court has also asked what relief is available "against the named defendants." Doc. 31 at 2. Because Florida names the United States as a Defendant, this Court may "enter[] . . . a judgment or decree . . . against the United States" itself. 5 U.S.C. § 702. All § 702 requires is that the Court "specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." *Id.* Florida's position is that the Court should preliminarily enjoin enforcement or implementation of the new OMB rule. But if the Court reaches the validity of the deviation clauses, § 702 authorizes an injunction against the head of each agency that issued such a clause. *See* Ex. 1. In other words, because Florida has

8

sued the United States, the Court need not limit relief to the named agencies and officials.[5]

        Respectfully submitted,

        Ashley Moody
        ATTORNEY GENERAL

        John Guard (FBN 374600)
        CHIEF DEPUTY ATTORNEY GENERAL

        */s/ James H. Percival*
        James H. Percival* (FBN 1016188)
        DEPUTY ATTORNEY GENERAL OF LEGAL POLICY
        *Lead Counsel

        Henry C. Whitaker (FBN 1031175)
        SOLICITOR GENERAL

        Natalie P. Christmas (FBN 1019180)
        ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

        Office of the Attorney General
        The Capitol, Pl-01
        Tallahassee, Florida 32399-1050
        (850) 414-3300
        (850) 410-2672 (fax)
        james.percival@myfloridalegal.com

        *Counsel for the State of Florida*

---

[5] At a minimum, because Florida sued officials from NASA, GSA, and DOD, those officials should be enjoined from enforcing or implementing their agencies' deviation clauses.

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ James H. Percival*
James H. Percival
